IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,

Plaintiff,

SEP 9 2025 PM2:39
FILED - USDC - FLMD - TPA

v.

STACI-ANNETTE: VARNUM, sui juris, by special appearance, in propria persona, in persona propria, SOUL BENEFICIARY & AUTHORIZED REPRESENTATIVE of STACI ANNETTE VARNUM and THE ESTATE OF CURTIS NEIL VARNUM,

Defendant.

Case No.: _____ (Federal case number to be assigned)

VERIFIED EMERGENCY MOTION TO VACATE FINAL JUDGMENT, TO

STAY FORECLOSURE SALE,

AND FOR FEDERAL INTERVENTION BASED ON FRAUD, LACK OF

JURISDICTION,

DEPRIVATION OF RIGHTS, AND JUDICIAL MISCONDUCT

1

## I.    INTRODUCTION

1. 10. Comes now Defendant, STACI-ANNETTE: VARNUM, sui juris, by Special Appearance, the SOUL BENEFICIARY & AUTHORIZED REPRESENTATIVE of STACI ANNETTE VARNUM and THE ESTATE OF CURTIS NEIL VARNUM, appearing in good faith, with clean hands, and in honor before this Honorable Court. Defendant resides at 30148 Clearview Drive, Wesley Chapel, Pasco County, Florida 33545. An emergency exists: the foreclosure sale of Defendant's homestead property is scheduled for today, September 9, 2025, at 11:00 a.m. Defendant's property is the first one listed on the public auction docket. Immediate federal intervention is necessary to stay the sale and prevent irreparable harm.

2. 11. Defendant acknowledges that she previously filed this matter in federal court on July 10, 2024, which was remanded to the state forum. However, this Verified Emergency Motion is filed anew based on newly discovered evidence of fraud, judicial misconduct, conspiracy, and deprivation of rights under color of law. Because the lower courts have failed to protect Defendant's constitutional rights and instead perpetuated fraud upon the court, it is the duty and obligation of this Court—under its oath to the Constitution and the People—to accept jurisdiction and provide remedy where the state forum has failed.

3. 12. Defendant has lost absolute and complete faith in the lower state courts. Pasco County Circuit Judge Susan Barthle has demonstrated bias, judicial misconduct, and clear disregard for Defendant's constitutional rights and due process. The lower court admitted fraudulent assignments, ignored evidence

2

of insurance payouts, accepted hearsay testimony from Plaintiff's counsel, refused to consider repeated audit requests, and issued rulings without hearings or proper service. Defendant cannot obtain remedy or a fair and impartial trial in the state forum.

13. Fraud vitiates everything it touches. U.S. v. Throckmorton, 98 U.S. 61 (1878). The foreclosure judgment entered against Defendant was procured by fraud, ultra vires acts, and concealment of material facts, and is therefore void ab initio. Fraudulent robo-signed assignments, concealment of FHA insurance payouts, manipulation of credit reporting, and refusal to provide accounting each strip the state court of lawful jurisdiction.

14. Judicial misconduct by Judge Barthle further compounded the fraud. She manipulated the FEMA moratorium to cancel a sale on false pretenses, left rescheduled dates blank to obscure public notice, imposed one-sided stipulations against Defendant without service, and denied emergency motions with handwritten rulings of "Denied as to emergency and denied as to substance" without hearing or analysis. Such conduct constitutes bias, collusion, and deprivation of rights under color of law, in violation of 18 U.S.C. §§ 241 & 242.

15. Defendant asserts that the federal judiciary has both the jurisdiction and the obligation to intervene. Federal judges are bound by their oath to the Constitution and to the People. To allow state courts to continue fraud, misconduct, and deprivation of rights unchecked would constitute a failure of that oath, erode the public's confidence in the justice system, and directly violate the Constitution this Court has sworn to protect.

16. 7. Constitutional rights have been violated repeatedly:

3

17. - 5th & 14th Amendments — deprivation of property without due process of law.

18. - 1st Amendment — denial of the right to petition courts for redress.

19. - 4th Amendment — unlawful seizure of property without lawful authority.

20. - 7th Amendment — denial of trial by jury in a controversy exceeding $20.

21. - 8th Amendment — excessive and punitive financial penalties.

22. - 9th & 13th Amendments — denial of retained rights and coercion into involuntary servitude through unlawful debt bondage.

23. - Article I, § 10 (Contracts Clause) — impairment of contracts through fraudulent assignments.

24. - Article VI (Supremacy Clause) — state foreclosure actions cannot override controlling federal law.

25. Plaintiff's conduct also constitutes violations of RESPA, TILA, FDCPA, and RICO, including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), securities fraud (15 U.S.C. § 77q), extortion, and concealment of insurance proceeds. Each act is a predicate offense under RICO, establishing a pattern of racketeering activity.

26. The Maxims of Equity apply: equity abhors a forfeiture, equity regards as done what ought to have been done, and equity will not suffer a wrong without a remedy. Defendant's home is on the verge of being stolen under color of law through a fraudulent scheme. Equity demands this Court act to prevent irreparable harm.

27. This Court is not merely permitted but compelled to act. Under the Supremacy Clause, federal statutes, and its fiduciary duty, this Court must

stay the scheduled foreclosure sale, vacate the fraudulent judgment, and assume jurisdiction over this matter. To refuse jurisdiction in the face of such violations would make this Court complicit in perpetuating fraud, treason against the Constitution, and the erosion of public faith in the justice system.

28. Defendant therefore prays this Court immediately stay the September 9, 2025 foreclosure sale, vacate the state court's fraudulent judgment, sanction Plaintiff and its counsel for fraud upon the court, and restore Defendant's rights and property in accordance with federal law and equity.

29. II. JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, and treaties of the United States, including but not limited to: the united States Constitution (1st, 4th, 5th, 7th, 8th, 9th, 13th, and 14th Amendments); the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.; the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968; the Securities Exchange Act, 15 U.S.C. § 77q; and the Uniform Commercial Code (UCC Articles 3 & 9).

31. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 for the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States. Defendant was repeatedly denied due process under the 5th and 14th Amendments, including failure of

5

service, lack of notice, denial of a meaningful opportunity to be heard, and judicial misconduct.

13. 32. Federal criminal statutes confer jurisdiction where rights were violated under color of law. Defendants' conduct constitutes violations of 18 U.S.C. § 241 (Conspiracy against rights) and 18 U.S.C. § 242 (Deprivation of rights under color of law). The foreclosure action was pursued through fraudulent documents, robo-signing, denial of due process, and collusion with a state judge acting without jurisdiction, each of which invokes federal oversight.

14. 33. Jurisdiction is further compelled by U.S. v. Throckmorton, 98 U.S. 61 (1878), which held that fraud vitiates even the most solemn judgments of courts. Because the foreclosure judgment below was procured by fraud, the state court never acquired lawful jurisdiction.

15. 34. In First National Bank of Montgomery v. Daly (Credit River Decision, 1968), the court declared a mortgage void for lack of consideration where the bank created credit out of nothing. Similarly, Shellpoint never extended lawful consideration from its own capital or reserves, but instead monetized the borrower's signature. Thus, no enforceable contract exists, and the foreclosure is void ab initio.

16. 35. In Fidelity Federal Savings & Loan Ass'n v. De la Cuesta, 458 U.S. 141 (1982), the Supreme Court affirmed that federal law preempts conflicting state foreclosure law. Because Congress never delegated foreclosure authority to foreign loan servicers like Shellpoint, state foreclosure statutes cannot override federal banking laws.

17. 36. In Citibank, N.A. v. Wells Fargo Asia Ltd., 495 U.S. 660 (1990), the Court confirmed federal jurisdiction over foreign financial entities. Shellpoint is a foreign-controlled Edge Act corporation, limited by 12 U.S.C. §§ 611–632, restricted to data processing and ECH transfers, not mortgage lending or foreclosure against private citizens.

18. 37. Congress has explicitly restricted such entities under the Federal Reserve Act of 1913 (12 U.S.C. § 83), the Banking Act of 1933 (Glass–Steagall), and the Garn–St. Germain Depository Institutions Act of 1982, which did not authorize foreign servicers to lend to or foreclose upon private citizens within the several States. Enforcement of a contract void from conception is unlawful and falls outside the jurisdiction of state courts.

19. 38. Further, Public Law 89-485 § 6(h) and 12 U.S.C. §§ 375A, 375B, and 371c(a)(2) restrict insider lending, related-party transactions, and collateralization practices. Shellpoint and its predecessors violated these federal safeguards by securitizing and monetizing the borrower's note without disclosure or lawful authority.

20. 39. Relief is also proper under the Supremacy Clause (U.S. Const. Art. VI, cl. 2) because federal law preempts fraudulent state foreclosure actions; the Contracts Clause (U.S. Const. Art. I, § 10) because fraudulent assignments impaired the alleged contract; and the Due Process Clause (U.S. Const. Amend. V & XIV) because Defendant was denied notice, hearing, and meaningful participation.

21.40. This Court has jurisdiction to enforce the equity maxims: Equity abhors a forfeiture, Equity regards as done that which ought to have been done, and Equity will not suffer a wrong without a remedy. Fraudulent foreclosure constitutes wrongful forfeiture, and equity mandates federal intervention.

22.41. Venue is proper in this District under 28 U.S.C. § 1391(b) because the property is located in this District, the events occurred here, and Defendants are subject to personal jurisdiction here.

23.42. This Honorable Court is not only empowered but obligated to exercise jurisdiction in this matter. Federal judges are bound by their oath to uphold the Constitution and to protect the inalienable rights of the People. Where lower courts have failed, acted with bias, or engaged in misconduct, it is the duty of the federal judiciary to intervene, remedy constitutional violations, and preserve the integrity of the justice system. To allow fraud, misconduct, and deprivation of rights to continue unchecked would constitute a failure of that oath, erode the public's confidence in the judiciary, and stand in direct opposition to the very Constitution this Court has sworn to protect.

43. III PARTIES

44. 25. Defendant, STACI-ANNETTE: VARNUM, sui juris, by Special Appearance, In Persona, Purpura, Ceri Juris, is a natural living woman, the SOUL BENEFICIARY & AUTHORIZED REPRESENTATIVE of STACI ANNETTE VARNUM and THE ESTATE OF CURTIS NEIL VARNUM. Defendant resides at 30148 Clearview Drive, Wesley Chapel, Pasco County, Florida 33545, and has lived at the subject property since 2014. Defendant purchased the property from her grandmother's estate on July 28, 2015.

8

45. 26. Defendant is not and has never been a signatory on the original promissory note alleged in this matter. The note was signed only by Defendant's late husband, Curt Neil Varnum. By operation of Florida law, Defendant became executor of his estate upon his death in September 2021. Nevertheless, Plaintiff filed the foreclosure action solely against Defendant in her personal capacity, never properly substituting the Estate, and while simultaneously addressing all correspondence to "The Estate of Curtis N. Varnum."

46. 27. Plaintiff, NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING ("Shellpoint"), is a foreign loan servicer and debt collector, not a depository institution or chartered bank. Shellpoint took over servicing of the subject loan on February 4, 2020. Shellpoint is subject to restrictions under the Federal Reserve Act (12 U.S.C. §§ 611–632), the Banking Act of 1933, and other federal statutes that limit foreign Edge Act corporations to data processing and related services. Shellpoint lacks congressional authority to lend to, contract with, or foreclose upon private American citizens within the several States.

47. 28. Shellpoint's foreclosure action is ultra vires and void ab initio, as Congress never granted Shellpoint or any foreign loan servicer the power to enforce residential mortgages or foreclose on homestead property. Its role is limited to servicing and data processing, not lending, deposit-taking, or foreclosure.

48. 29. Ditech Financial LLC ("Ditech") was the original lender identified in the promissory note. Ditech entered bankruptcy and ceased operations in 2019–2020. The alleged mortgage loan was securitized, sold, and paid in full, extinguishing any enforceable obligation. Plaintiff has never produced a valid assignment from Ditech to Shellpoint.

49. 30. Judge Susan G. Barthle, Pasco County Circuit Court, presided over the foreclosure case in the 6th Judicial Circuit. Defendant alleges that Judge Barthle acted outside her jurisdiction, engaged in judicial misconduct, and deprived Defendant of her rights under color of law, in violation of 18 U.S.C. §§ 241 and 242.

50. 31. Counsel for Plaintiff, Sheena Diaz, Esq., of Diaz & Associates, acted in conspiracy with Shellpoint by filing fraudulent assignments, robo-signed documents, and false certificates of service, while also testifying as a witness in violation of evidentiary rules. Ms. Diaz knowingly advanced fraudulent claims, failed to respond to Defendant's objections and requests for proof, and participated in a scheme to deprive Defendant of property without lawful authority.

51. 32. The Estate of Curt Neil Varnum is the true party in interest under Florida law. However, Plaintiff deliberately avoided naming or substituting the Estate in the foreclosure case, proceeding instead against Defendant individually, despite multiple written and oral acknowledgments from Shellpoint representatives that Defendant was not obligated on the debt.

## FACTUAL BACKGROUND

52. 33. Defendant, STACI-ANNETTE: VARNUM, has lived at the subject property since 2014. The property has been in Defendant's family since 2006 and was purchased by Defendant on July 28, 2015, from her grandmother's estate.

53. 34. The property is legally described as:

54. Lot 185, Williams Double Branch Estates, Plat Book 12, Pages 106–112, Pasco County, Florida. Including a 2005 manufactured home ID

FLHML3F173728585A/B; Title Nos. 95148506 and 9548392; RP Decals 12419546 and 12419548; Parcel ID 33-25-20-0010-00000-1850.

55. 35. The original lender was Ditech Financial LLC ("Ditech"). Ditech entered bankruptcy in 2019 and ceased operations, extinguishing any claim it may have held. Ditech securitized and sold the alleged loan, monetizing Defendant's husband's signature without disclosure or equal consideration, rendering the obligation unenforceable.

56. 36. On February 4, 2020, Shellpoint Mortgage Servicing began servicing the loan. Shellpoint is not a bank or depository institution but a foreign-controlled Edge Act corporation limited to data processing. Congress never authorized Shellpoint to lend, contract with, or foreclose upon private citizens in the several States.

57. 37. On November 28, 2022, Shellpoint filed an Assignment of Mortgage in the county records—nearly three years after taking over servicing. The assignment contained robo-signed names of individuals not identified as Shellpoint employees, was notarized by a Delaware notary, and failed to evidence any lawful transfer of ownership.

58. 38. Two days later, on November 30, 2022, Shellpoint reported to TransUnion that the loan was "paid in full." Nevertheless, Shellpoint continued collecting monthly payments from Defendant through September 2023 while simultaneously pursuing foreclosure, constituting fraud, double recovery, and unjust enrichment.

59. 39. Defendant obtained copies of credit bureau reports showing TransUnion reported a $0 balance as of November 30, 2022, while Equifax later also reported a $0 balance. Shellpoint's own litigation records contradict these reports, further evidencing fraud and misrepresentation.

11

60. 40. In September 2021, after the death of Curt Neil Varnum, Defendant provided Shellpoint with a copy of his death certificate. Defendant reasonably believes Shellpoint received FHA insurance proceeds upon his death but failed to disclose these proceeds while continuing to demand payments and pursue foreclosure.

61. 41. During this period, Shellpoint representatives admitted on recorded lines that Defendant was "not obligated on this debt." Despite such admissions, Shellpoint continued to accept Defendant's payments and prosecute foreclosure proceedings.

62. 42. Service of process in the foreclosure case was defective. The process server left papers with Defendant's 19-year-old son outside the family home, not with Defendant personally, in violation of Fla. R. Civ. P. 1.070 and constitutional due process standards established in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950).

63. 43. Plaintiff's filings contained fraudulent and robo-signed documents. Affidavits were notarized without witnesses, assignments bore fictitious names recycled in other states, and the Allonge to the note was signed by individuals who were not present at the closing. These defects destroy standing and constitute fraud upon the court.

64. 44. Shellpoint produced only a photocopy of the alleged Ditech promissory note, not the original wet-ink instrument. Under UCC §§ 3-302 and 3-305, once a note has been securitized or paid, it ceases to exist as an enforceable obligation. No lawful contract between Defendant and Shellpoint has ever been produced.

65. 45. Defendant requested a full forensic audit of the account, including accounting ledgers, CUSIP numbers, and disclosure of insurance payouts. Shellpoint refused, concealing material facts and violating GAAP, FFIEC reporting standards, RESPA (12 U.S.C. § 2605), and Defendant's statutory right to disclosure.

66. 46. Defendant was in active HUD loss mitigation at the time foreclosure was initiated. Shellpoint failed to provide the required 30-day cure notice, face-to-face interview, or counseling mandated by 24 C.F.R. § 203.604. Initiating foreclosure while loss mitigation was ongoing violated FHA and HUD regulations and deprived Defendant of due process.

67. 47. On April 18, 2025, Shellpoint filed a Motion to Reschedule Foreclosure Sale, falsely certifying service on Defendant. Defendant never received such notice, rendering the motion fraudulent and violating Fed. R. Civ. P. 5.

68. 48. The state court initially scheduled a foreclosure sale for September 9, 2024. Two days before the sale, Shellpoint moved to cancel citing an expired FEMA moratorium. Judge Barthle granted the motion and left the rescheduled sale date blank. In fact, the FEMA moratorium for FHA loans expired the same day, July 10, 2024. This was a deliberate manipulation to avoid federal scrutiny while keeping Defendant uninformed.

69. 49. Judge Barthle later re-set the foreclosure sale at Plaintiff's request but imposed additional one-sided stipulations against Defendant without notice or hearing. Judge Barthle denied Defendant's Emergency Motions to Stay and to Vacate with a handwritten note—"Denied as to emergency and denied as to substance"—entered without hearing, legal analysis, or consideration of evidence.

13

70. 50. Judge Barthle's actions constitute judicial misconduct, bias, and conspiracy under color of law. By ignoring fraud, admitting hearsay testimony from Plaintiff's counsel, and issuing rulings without due process, she deprived Defendant of constitutional rights and failed her fiduciary duty under oath to the Constitution.

71. 51. Defendant has exhausted all remedies in the state forum, repeatedly raising fraud, jurisdiction, standing, and constitutional violations. The state court ignored each objection, proceeding instead on fraudulent filings. Defendant has no remedy available in state court and therefore seeks relief in this federal forum.

72. FACTUAL BACKGROUND (continued)

73. 52. Defendant made regular monthly mortgage payments for nearly a decade, including escrow funds for taxes and insurance. Despite this, Shellpoint's accounting shows an alleged "alance of approximately $88,000 remaining on a loan that originally totaled around $90,000. Defendant paid approximately $800 per month for nearly 10 years, yet Plaintiff's accounting reflects little or no reduction in principal. This discrepancy is evidence of false accounting, usury, and concealment of insurance payouts, escrow credits, and securitization proceeds.

74. 53. Defendant and her late husband provided the down payment and carried homeowners' insurance, property tax escrow, and mortgage insurance as required by FHA/HUD. These funds were supposed to be properly applied to the loan balance. Instead, Shellpoint and its predecessors misapplied escrow and insurance credits, concealing the true balance and unjustly enriching themselves.

75. 54. Defendant repeatedly requested a forensic audit of the account, including ledgers, escrow records, insurance disbursements, and securitization proceeds. Shellpoint ignored or refused these requests, acting as though such audits did not exist, despite requirements under RESPA, GAAP, and FFIEC standards.

14

76. 55. On multiple occasions, Shellpoint representatives confirmed to Defendant that she was "not obligated on the debt." These admissions were made after Defendant reported her husband's death in 2021. Despite this, Shellpoint continued to accept Defendant's payments, falsely claimed standing in court, and pursued foreclosure.

77. 56. Every written communication from Shellpoint regarding the loan was addressed to "The Estate of Curtis N. Varnum," not Defendant personally. Despite this, Plaintiff filed foreclosure solely against Defendant in her personal capacity, never naming or substituting the Estate, in direct conflict with Florida probate law.

78. 57. Defendant attempted to cure any alleged arrears in good faith by offering payments in January 2024 after returning to work, but Shellpoint refused to accept payments, deliberately forcing Defendant into default to accelerate foreclosure.

79. 58. Defendant also submitted a negotiable instrument package to the U.S. Treasury, IRS, and Attorney General, with copies sent to Shellpoint and its counsel. The package was intended to discharge the debt in honor and good faith. Shellpoint rejected the instrument without lawful basis and continued foreclosure proceedings, acting in dishonor.

80. 59. Shellpoint's assignment and Allonge documents are fraudulent. The Allonge includes endorsements "Pay to the Order of Ditech" and "Pay to the Order of Green Tree Servicing," signed by individuals not present at the closing. The assignment was notarized by an out-of-state Delaware notary and bore robo-signed names repeated across multiple states in other cases.

81. 60. Shellpoint has never demonstrated purchase of the alleged debt for value or shown a properly funded collateral deposit account, as required by federal banking statutes. Plaintiff is merely a servicer and debt collector, not a creditor with standing to enforce the note or mortgage.

82. 61. Defendant identified at least five separate foreclosure sale dates scheduled in this case:

83. a. Two were stopped by Defendant's bankruptcy filings;

84. b. One was canceled due to Plaintiff's failure to publish public notice on time;

85. c. One was canceled two days before the scheduled sale, under pretext of a FEMA moratorium; and

86. d. The current sale, scheduled for September 9, 2025, at 11:00 a.m., is the fifth attempt.

87. 62. The FEMA moratorium cited by Plaintiff and Judge Barthle applied only to FHA loans and expired on July 10, 2024—the very day the scheduled sale was set to occur. Plaintiff's motion to cancel and Judge Barthle's order leaving the new sale date blank were deliberate manipulations to prevent Defendant from removing the case to federal court and to avoid federal scrutiny.

88. 63. Defendant previously placed the court on judicial notice of fraud upon the court under Fed. R. Civ. P. 60(d)(3) and void judgments under Rule 60(d)(4), warning that any party who continued to advance the fraud would lose qualified immunity and face personal liability. Judge Barthle ignored this notice, failed to report the misconduct to federal authorities, and continued to preside without jurisdiction.

89. 64. Judge Barthle's conduct is particularly troubling given her public record. In 2010, she spoke out in favor of homeowners and against banks' imposition of

excessive fees during the foreclosure crisis. Yet in this matter, she aligned with the mortgage servicer, disregarding evidence of fraud, and imposed one-sided stipulations against Defendant without notice.

90. 65. Judge Barthle set one sale date at 60 days instead of the 70 days Plaintiff requested in its motion, violating Plaintiff's own proposed terms. She then imposed additional hurdles against Defendant as conditions to stop the sale, even though the court lacked jurisdiction from inception.

91. 66. At the June 6, 2024 Final Judgment hearing, Judge Barthle admitted hearsay testimony from Plaintiff's counsel, Ms. Diaz, who improperly acted as both attorney and witness. Defendant objected and raised multiple due process violations, including failure of service, defective assignment, and fraud upon the court. Judge Barthle ignored these objections and entered final judgment.

92. 67. Defendant learned of the Final Judgment hearing only two days before, at mediation on June 4, 2024. Despite raising objections to the short notice, the court proceeded, depriving Defendant of adequate time to prepare or present evidence, violating due process rights.

93. 68. Shellpoint's accounting is demonstrably false. Despite nearly a decade of payments, the balance allegedly owed is nearly the same as the original loan amount. This is mathematically impossible without concealment of escrow, FHA insurance, or securitization credits. Defendant believes Shellpoint received insurance payouts and FHA claims upon her husband's death and failed to credit these amounts.

94. 69. Plaintiff's fraudulent scheme extends to identity theft and unjust enrichment. Millions of dollars in bonds were created in Defendant's name and case number without disclosure, constituting theft of Defendant's identity and

financial exploitation. Defendant was never notified of these bonds or given the opportunity to contest their creation or proceeds.

95. 70. Defendant asserts that the foreclosure case is the fruit of a poisonous tree. Every order, judgment, and sale date flows from fraudulent assignments, void instruments, robo-signed documents, false affidavits, and judicial misconduct. Because the root is fraudulent, all resulting actions are void ab initio and must be vacated.

96. FACTUAL BACKGROUND (continued)

97. 71. Defendant was in active HUD loss mitigation at the time Shellpoint initiated foreclosure. Defendant worked directly with Shellpoint's loss mitigation representatives, submitted financial documentation, and attempted to negotiate repayment. Despite this, Plaintiff filed foreclosure, violating HUD and FHA regulations that require servicers to exhaust loss mitigation options before proceeding.

98. 72. On multiple occasions, Defendant informed Shellpoint's loss mitigation department that she wished to cure any arrears. In January 2024, Defendant offered payment to reinstate the account, but Shellpoint refused, ensuring that Defendant would cross the 120-day delinquency threshold required for foreclosure initiation under 12 C.F.R. § 1024.41(f). This refusal to accept lawful payment was a deliberate act to accelerate foreclosure.

99. 73. Shellpoint failed to comply with 24 C.F.R. § 203.604, which mandates a face-to-face meeting or diligent effort before initiating foreclosure on FHA-insured loans. No meeting was scheduled or attempted, and no notice of this right was provided.

18

100. 74. Shellpoint also failed to provide the 30-day cure notice required by HUD regulations. Instead, Plaintiff pursued foreclosure without affording Defendant a meaningful opportunity to cure default, a violation of both federal regulations and Defendant's due process rights.

101. 75. Defendant received a certified USPS package from Shellpoint in September 2025 containing new loss mitigation paperwork. This was after final judgment had already been entered and the foreclosure sale was scheduled. Sending loss mitigation paperwork at this stage demonstrates Plaintiff's inconsistent conduct and admission that foreclosure proceedings were not handled in compliance with HUD/FHA requirements from the outset.

102. 76. Defendant repeatedly requested disclosure of the true holder of the alleged note, all insurance proceeds received, and all securitization records. Plaintiff refused to provide this information, violating RESPA, 12 U.S.C. § 2605€, which requires servicers to respond to qualified written requests.

103. 77. Defendant also requested all accounting ledgers under GAAP and FFIEC standards, including collateral deposit accounts, credits applied from FHA/HUD insurance, and securitization proceeds. Plaintiff failed to produce any of this, concealing the true financial structure of the transaction.

104. 78. On or about mid-2024, Defendant submitted a negotiable instrument package in honor and good faith to the U.S. Treasury, IRS, and U.S. Attorney General, with copies provided to Plaintiff's representatives. This package was intended to discharge any alleged obligation in full. Plaintiff rejected the instrument without lawful explanation and pressed forward with foreclosure.

105. 79. By refusing to honor the negotiable instrument while continuing to prosecute foreclosure, Plaintiff acted in dishonor, violated UCC §§ 3-104, 3-305, and 9-210, and deprived Defendant of her statutory rights to tender and discharge obligations through lawful means.

106. 80. Plaintiff also violated the Truth in Lending Act (TILA), 15 U.S.C. § 1635, by failing to provide accurate disclosures regarding finance charges, right of rescission, and securitization. Defendant never received truthful disclosures concerning the funding of the loan, nor was Defendant informed that her husband's promissory note would be monetized, securitized, and sold for profit.

107. 81. Plaintiff further violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g, by failing to validate the debt when requested, using deceptive means to collect, and pursuing foreclosure despite admitting Defendant was not obligated on the debt.

108. 82. Plaintiff violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, by furnishing false information to credit bureaus. Plaintiff reported the loan as "paid in full" on November 30, 2022, but continued to collect payments thereafter and re-reported a balance, creating contradictory and misleading consumer credit records.

109. 83. Plaintiff's conduct constitutes a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Predicate acts include:

110. a. Mail fraud, 18 U.S.C. § 1341, through false assignments and notices;

111. b. Wire fraud, 18 U.S.C. § 1343, through electronic filings and communications in furtherance of fraud;

20

112. c. Bank fraud, 18 U.S.C. § 1344, through misrepresentation of loan ownership and FHA insurance proceeds;

113. d. Conspiracy against rights, 18 U.S.C. § 241, through collusion with state actors; and

114. e. Deprivation of rights under color of law, 18 U.S.C. § 242, through judicial misconduct and denial of due process.

115. 84. Defendant asserts that Judge Barthle was complicit in this scheme by ignoring fraud, manipulating moratorium rules, issuing rulings without hearings, and accepting hearsay testimony. By doing so, she acted outside her jurisdiction and became a participant in the conspiracy.

116. 85. The cumulative effect of these violations shows that the foreclosure was pursued without jurisdiction, without standing, and in violation of Defendant's constitutional rights. Every judgment and order entered in the state forum is void ab initio and unenforceable in law or equity.

117. 86. Defendant asserts that equity, law, and the Constitution compel this Court to intervene. To permit the foreclosure sale to proceed on September 9, 2025, would sanction theft under color of law, perpetuate a criminal conspiracy, and irreparably damage public confidence in the justice system.

COUNT I – FRAUD UPON THE COURT (FED. R. CIV. P. 60(D)(3))

118. 87. Defendant realleges and incorporates by reference ¶¶1–86 as if fully set forth herein.

21

119. 88. Plaintiff knowingly submitted false and fraudulent documents to the state court, including but not limited to robo-signed assignments, fabricated affidavits, and an Allonge signed by individuals not present at closing.

120. 89. Plaintiff filed a false Assignment of Mortgage on November 28, 2022, nearly three years after taking over servicing, in order to create a false appearance of standing. The assignment bore robo-signed signatures, was notarized by a Delaware notary, and was not supported by lawful transfer of ownership.

121. 90. Plaintiff's counsel, Sheena Diaz, knowingly presented hearsay testimony, acted as both attorney and witness, and filed certificates of service falsely claiming Defendant had been served with motions and orders.

122. 91. The state court, presided over by Judge Susan Barthle, knowingly accepted these false filings and failed to investigate or act upon Defendant's repeated objections and notices of fraud.

123. 92. Fraud upon the court strikes at the very integrity of the judicial process. See U.S. v. Throckmorton, 98 U.S. 61 (1878). Fraud vitiates even the most solemn judgments.

124. 93. Because the foreclosure judgment was procured by fraud upon the court, it is void ab initio and must be vacated pursuant to Fed. R. Civ. P. 60(d)(3).

COUNT II – VOID JUDGMENT FOR LACK OF JURISDICTION (FED. R. CIV. P. 60(D)(4))

125. 94. Defendant realleges and incorporates by reference ¶¶1–93 as if fully set forth herein.

22

126. 95. A judgment entered by a court without jurisdiction is void ab initio. A void judgment is a legal nullity and may be set aside at any time. See Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 353 (1920).

127. 96. Plaintiff lacked standing to pursue foreclosure from inception. Plaintiff is a foreign-controlled Edge Act corporation, limited under 12 U.S.C. §§ 611–632 to data processing and electronic transfers, and never authorized by Congress to lend, contract with, or foreclose upon private citizens in the several States.

128. 97. Plaintiff never produced a valid contract bearing Defendant's or her late husband's signature, never demonstrated purchase of the alleged debt for value, and never produced a properly funded collateral deposit account as required by 12 U.S.C. §§ 84, 375A, and 375B.

129. 98. The purported promissory note was securitized and sold, extinguishing the obligation. Under UCC §§ 3-302 and 3-305, once an instrument has been discharged or securitized, it ceases to be enforceable.

130. 99. Every assignment presented by Plaintiff was fraudulent, robo-signed, and defective, destroying the chain of title and eliminating any lawful standing to enforce the mortgage.

131. 100. Judge Barthle proceeded despite knowing Plaintiff lacked standing, admitted hearsay testimony, and denied Defendant's motions without hearings. By ignoring jurisdictional defects, the state court acted ultra vires.

132. 101. Because Plaintiff lacked standing and the state court lacked jurisdiction, the final judgment of foreclosure is void and must be vacated pursuant to Fed. R. Civ. P. 60(d)(4).

133. Since the loss of her husband Curt Neil Varnum, the Defendant has suffered not only the devastation of grief, but the unbearable hardship of attempting to fight this fraudulent foreclosure alone while unemployed, without legal training, and while caring for a household that has been in her family since 2006. The emotional toll of reliving her husband's death during every phase of this litigation, coupled with the risk of losing their shared home, has caused irreparable pain and trauma. The Defendant's nursing license was lost during this litigation, she has been unable to work for the past 11 months, and she is facing the permanent loss of a 25-year career in nursing as a direct result of the stress, reputational damage, and procedural abuses suffered in this case.

COUNT III – DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983; 18 U.S.C. §§ 241–242)

134. 102. Defendant realleges and incorporates by reference ¶¶1–101 as if fully set forth herein.

135. 103. Judge Susan Barthle, acting under color of state law, deprived Defendant of rights secured by the U.S. Constitution, including but not limited to the 5th and 14th Amendments (due process), the 7th Amendment (jury trial in property disputes exceeding $20), and the 1st Amendment (right to petition the courts for redress).

136. 104. Judge Barthle denied Defendant's motions without hearings, imposed unilateral stipulations, admitted hearsay testimony, and refused to address fraud on the court, depriving Defendant of due process and equal protection.

24

137. 105. Plaintiff and its attorneys conspired with Judge Barthle to deprive Defendant of rights under color of law, constituting violations of 42 U.S.C. § 1983 and federal criminal statutes 18 U.S.C. §§ 241 and 242.

138. 106. Relief is warranted to vacate the void judgment, stay the foreclosure sale, and refer the matter to the U.S. Attorney and Department of Justice for investigation of civil rights violations.

COUNT IV – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA, 12 U.S.C. § 2601 ET SEQ.)

139. 107. Defendant realleges and incorporates by reference ¶¶1–106 as if fully set forth herein.

140. 108. Defendant submitted multiple qualified written requests to Shellpoint under RESPA seeking identification of the true holder of the note, disclosure of FHA insurance proceeds, and accounting ledgers showing payments and escrow disbursements.

141. 109. Plaintiff failed to respond to these requests as required by 12 U.S.C. § 2605€, thereby violating RESPA.

142. 110. Plaintiff also failed to provide timely notice of transfer of servicing rights and failed to credit payments properly, further violating 12 U.S.C. § 2605(k)(1).

25

143. 111. Defendant has been damaged by these violations, including false reporting to credit bureaus, concealment of FHA insurance proceeds, and the initiation of foreclosure without standing.

## COUNT V – VIOLATION OF THE TRUTH IN LENDING ACT (TILA, 15 U.S.C. § 1601 ET SEQ.)

144. 112. Defendant realleges and incorporates by reference ¶¶1–111 as if fully set forth herein.

145. 113. Plaintiff failed to disclose the true finance charges, securitization of the loan, and the right to rescind as required by TILA.

146. 114. Plaintiff failed to provide accurate material disclosures at the inception of the loan, including the fact that Defendant's husband's promissory note would be monetized and securitized, rather than funded from Plaintiff's capital.

147. 115. By concealing the true nature of the transaction, Plaintiff violated 15 U.S.C. § 1635 and Regulation Z.

148. 116. Defendant seeks rescission of the loan, restitution of all amounts paid, and statutory damages under 15 U.S.C. § 1640.

## COUNT VI – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA, 15 U.S.C. § 1692 ET SEQ.)

149. 117. Defendant realleges and incorporates by reference ¶¶1–116 as if fully set forth herein.

150. 118. Shellpoint acted as a debt collector within the meaning of the FDCPA.

151. 119. Plaintiff pursued foreclosure despite admitting on recorded lines that Defendant was not obligated on the debt. Plaintiff's communications were therefore false, deceptive, and misleading in violation of 15 U.S.C. § 1692e.

152. 120. Plaintiff failed to validate the debt when requested and continued collection efforts in violation of 15 U.S.C. § 1692g.

153. 121. Plaintiff attempted to collect amounts not legally owed, including payments on a loan that had been reported "paid in full" to TransUnion, in violation of 15 U.S.C. § 1692f.

154. 122. Defendant seeks statutory and actual damages for FDCPA violations.

## COUNT VII – VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA, 15 U.S.C. § 1681 ET SEQ.)

155. 123. Defendant realleges and incorporates by reference ¶¶1–122 as if fully set forth herein.

156. 124. Plaintiff reported to TransUnion on November 30, 2022, that the loan was "paid in full" with a $0 balance. Despite this, Plaintiff continued to collect payments into September 2023 and pursued foreclosure.

157. 125. Plaintiff later re-reported a balance, creating contradictory and misleading records on Defendant's consumer credit reports.

158. 126. Such conduct constitutes furnishing false information in violation of 15 U.S.C. § 1681s-2(a).

159. 127. Defendant seeks statutory and punitive damages for these violations.

COUNT VIII – VIOLATION OF THE UNIFORM COMMERCIAL CODE (UCC, ARTICLES 3 AND 9)

160. 128. Defendant realleges and incorporates by reference ¶¶1–127 as if fully set forth herein.

161. 129. Under UCC § 3-302, a holder in due course must take an instrument for value, in good faith, and without notice of defenses. Plaintiff is not a holder in due course because it never purchased the alleged debt for value, the note was securitized, and multiple defenses exist.

162. 130. Under UCC § 3-305, a borrower may assert defenses of fraud, lack of consideration, and discharge. Plaintiff concealed securitization, received FHA

insurance proceeds, and failed to provide equal consideration, discharging any obligation.

163. 131. Under UCC § 9-210, Plaintiff was required to provide an accounting upon request. Defendant repeatedly requested an accounting, which Plaintiff refused, in violation of the UCC.

164. 132. The alleged mortgage and note are unenforceable under the UCC, and any foreclosure judgment based on them is void.

COUNT IX – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO, 18 U.S.C. §§ 1961–1968)

165. 133. Defendant realleges and incorporates by reference ¶¶1–132 as if fully set forth herein.

166. 134. Plaintiff, its attorneys, and Judge Barthle engaged in a pattern of racketeering activity that included mail fraud, wire fraud, bank fraud, and conspiracy to deprive rights.

167. 135. Predicate acts include fraudulent assignments, false certificates of service, false credit reporting, robo-signed documents, and collusion between Plaintiff and a state court judge acting without jurisdiction.

168. 136. Defendant has suffered injury to her property, rights, and livelihood as a direct result of this racketeering activity.

169. 137. Defendant seeks treble damages, attorney's fees (in equity), and all relief available under RICO.

## COUNT X – UNJUST ENRICHMENT

170. 138. Defendant realleges and incorporates by reference ¶¶1–137 as if fully set forth herein.

171. 139. Plaintiff received payments from Defendant from 2014 through September 2023, despite reporting the loan "paid in full" on November 30, 2022.

172. 140. Plaintiff also received or benefitted from FHA insurance proceeds after the death of Defendant's husband, yet failed to credit Defendant for such proceeds.

173. 141. Plaintiff monetized the promissory note, securitized it, and created financial instruments and bonds for profit without disclosure to Defendant.

174. 142. Plaintiff's retention of these unjust gains violates principles of equity.

175. 143. Defendant seeks restitution of all payments made, disgorgement of all insurance proceeds, and recovery of all unjust enrichment obtained through securitization and bond creation.

COUNT XI – VIOLATIONS OF HUD/FHA SERVICING REQUIREMENTS (24 C.F.R. §§ 203.500, 203.604, 203.605, 203.606)

176. 144. Defendant realleges and incorporates ¶¶1–143 as if fully set forth herein.

177. 145. The loan at issue was FHA-insured. HUD/FHA servicing regulations require, among other things, a face-to-face meeting or diligent effort to arrange one before foreclosure (24 C.F.R. § 203.604), timely cure opportunities (24 C.F.R. § 203.606), and good-faith loss mitigation (24 C.F.R. §§ 203.500, 203.605).

178. 146. Plaintiff failed to conduct a face-to-face meeting or make diligent efforts; failed to provide notice and opportunity to cure as required; and accelerated foreclosure while Defendant was in active loss mitigation.

179. 147. Plaintiff's noncompliance bars foreclosure, renders the judgment voidable, and entitles Defendant to equitable and declaratory relief.

COUNT XII – DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)

180. 148. Defendant realleges and incorporates ¶¶1–147.

181. 149. An actual controversy exists regarding the enforceability of the alleged note and mortgage, Plaintiff's standing, and whether the foreclosure judgment is void.

182. 150. Defendant seeks a declaration that: (a) the alleged contract is void ab initio for lack of consideration, securitization/discharge, and ultra vires acts; (b)

31

Plaintiff lacks standing; (c) the foreclosure judgment is void; and (d) title to Defendant's property is free and clear of Plaintiff's claims.

183. 151. Defendant also seeks further necessary relief under § 2202.

## COUNT XIII – INJUNCTIVE RELIEF: TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION (FED. R. CIV. P. 65)

184. 152. Defendant realleges and incorporates ¶¶1–151.

185. 153. The foreclosure sale is scheduled for today, September 9, 2025 at 11:00 a.m. Absent immediate injunctive relief, Defendant will suffer irreparable harm— the loss of a homestead—which cannot be remedied by money damages.

186. 154. Defendant is likely to succeed on the merits based on fraud upon the court, lack of jurisdiction, federal statutory violations, and constitutional deprivations.

187. 155. The balance of equities favors Defendant; Plaintiff faces no cognizable prejudice from a brief stay to adjudicate jurisdiction and fraud, whereas Defendant faces loss of her home.

188. 156. The public interest favors maintaining the integrity of the courts, preventing fraud, and enforcing HUD/FHA regulations.

## COUNT XIV – CIVIL CONSPIRACY (FLORIDA COMMON LAW)

189. 157. Defendant realleges and incorporates ¶¶1–156.

190. 158. Plaintiff, its counsel, and state actors conspired to commit unlawful acts (fraud upon the court, deprivation of rights, false reporting), and/or lawful acts by unlawful means.

191. 159. Overt acts include filing fraudulent assignments, false certificates of service, hearsay testimony, and manipulating the docket and moratorium dates.

192. 160. Defendant suffered damages including imminent loss of homestead, emotional distress, litigation costs, and reputational harm.

COUNT XV – ABUSE OF PROCESS

193. 161. Defendant realleges and incorporates ¶¶1–160.

194. 162. Plaintiff used the judicial process primarily to extort payment and seize property without standing, including filing a knowingly defective assignment and pursuing foreclosure despite discharge indicators ("paid in full" reporting).

195. 163. Such use of process for an improper purpose constitutes abuse of process under Florida law, entitling Defendant to damages and injunctive relief.

COUNT XVI – QUIET TITLE (FLA. STAT. § 65.061)

196. 164. Defendant realleges and incorporates ¶¶1–163.

197. 165. Plaintiff's claims and recorded instruments (including the defective assignment) cast a cloud on title to Defendant's homestead.

198. 166. Because the alleged note/mortgage are unenforceable and the judgment void, Defendant is entitled to a decree quieting title against Plaintiff and all claiming through it.

COUNT XVII – SLANDER OF TITLE

199. 167. Defendant realleges and incorporates ¶¶1–166.

200. 168. Plaintiff published false statements in the public records (e.g., fraudulent assignment), disparaging Defendant's title with malice and reckless disregard for truth.

201. 169. Defendant suffered special damages, including interference with sale/refinance opportunities and costs to clear title.

COUNT XVIII – CONVERSION & CONSTRUCTIVE TRUST

202. 170. Defendant realleges and incorporates ¶¶1–169.

203. 171. Plaintiff wrongfully exercised dominion over Defendant's funds by collecting payments after discharge indicators, retaining insurance proceeds and securitization gains that should have been credited or returned.

34

204. 172. Equity imposes a constructive trust over all such proceeds, requiring accounting and disgorgement.

COUNT XIX – EQUITABLE ACCOUNTING & TURNOVER (UCC § 9-210; FED. R. CIV. P. 67; ALL WRITS ACT, 28 U.S.C. § 1651)

205. 173. Defendant realleges and incorporates ¶¶1–172.

206. 174. Complex financial transactions involving escrow, insurance, securitization, and alleged CUSIP monetization require an equitable accounting.

207. 175. Defendant seeks an order compelling full ledgers (both sides of the books), identification of the true holder, all insurance claims/proceeds, and all securitization receipts, and directing the deposit of disputed sums/instruments into the Registry of the Court.

COUNT XX – SANCTIONS FOR BAD-FAITH LITIGATION & MULTIPLYING PROCEEDINGS (FED. R. CIV. P. 11; 28 U.S.C. § 1927)

208. 176. Defendant realleges and incorporates ¶¶1–175.

209. 177. Plaintiff and its counsel advanced claims without evidentiary basis, relied on fabricated documents, and multiplied proceedings in bad faith.

210. 178. Sanctions are warranted, including fees (in equity), penalties, and referral for disciplinary review.

35

COUNT XXI – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA, FLA. STAT. § 501.201 ET SEQ.)

211. 179. Defendant realleges and incorporates ¶¶1–178.

212. 180. Plaintiff engaged in unfair/deceptive acts by concealing discharge indicators, misapplying payments, refusing audits, and pursuing foreclosure without standing.

213. 181. Defendant suffered actual damages, including payments wrongly collected and costs incurred to defend title.

214. 182. Defendant seeks damages, declaratory and injunctive relief, and fees under FDUTPA.

COUNT XXII – NEGLIGENT MISREPRESENTATION

215. 183. Defendant realleges and incorporates ¶¶1–182.

216. 184. Plaintiff supplied false information (ownership/standing, balance due, servicing compliance) for the guidance of others, without reasonable care.

217. 185. Defendant justifiably relied on such information to her detriment, including making payments and forgoing other remedies.

36

## COUNT XXIII – CIVIL THEFT (FLA. STAT. § 772.11)

218. 186. Defendant realleges and incorporates ¶¶1–185.

219. 187. Plaintiff knowingly obtained/used Defendant's property (payments, escrow credits, insurance proceeds) with felonious intent to deprive Defendant of such property, after reporting the loan "paid in full" to TransUnion.

220. 188. Defendant seeks treble damages and fees pursuant to § 772.11 and will serve any prerequisite demand to the extent required.

## COUNT XXIV – ULTRA VIRES / VOID AB INITIO (EQUITABLE & DECLARATORY)

221. 189. Defendant realleges and incorporates ¶¶1–188.

222. 190. Plaintiff's acts exceeded its lawful powers (ultra vires): it is a servicer, not a bank; Congress did not authorize it to lend or foreclose; it never purchased the debt for value; and it enforced a contract without consideration.

223. 191. Acts beyond corporate and statutory authority are void from inception; no court may enforce a void instrument. Equity demands vacatur and restitution.

## COUNT XXV – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

224. 192. Defendant realleges and incorporates ¶¶1–191.

225. 193. Even if any agreement were enforceable (it is not), Plaintiff breached the implied covenant by refusing to accept cure, misapplying payments, concealing insurance/surcharges, and rushing to foreclosure.

226. 194. Defendant seeks damages and equitable relief.

## COUNT XXVI – UNCLEAN HANDS / EQUITABLE ESTOPPEL (EQUITABLE DEFENSES & RELIEF)

227. 195. Defendant realleges and incorporates ¶¶1–194.

228. 196. Plaintiff seeks equitable relief (foreclosure) with unclean hands: fabricated assignments, concealment, refusal of audit, and double recovery.

229. 197. Plaintiff is equitably estopped from denying discharge indicators or from enforcing instruments procured by fraud; equity bars foreclosure.

## COUNT XXVII – WRONGFUL FORECLOSURE / SET-ASIDE

230. 198. Defendant realleges and incorporates ¶¶1–197.

231. 199. Plaintiff lacked standing; the note/mortgage were discharged/securitized; HUD/FHA requirements were violated; and the state court acted without jurisdiction.

232. 200. Defendant seeks an order setting aside the foreclosure judgment, canceling the sale, and restoring all rights.

## COUNT XXVIII – GROSS NEGLIGENCE & WILLFUL MISCONDUCT

233. 201. Defendant realleges and incorporates ¶¶1–200.

234. 202. Plaintiff's conduct—continuing collections after "paid in full" reporting; filing fraudulent assignments; refusing audits—constitutes gross negligence and willful misconduct.

235. 203. Defendant seeks compensatory and punitive damages.

236. 204. Likelihood of Success: Defendant has shown fraud upon the court (robo-signed documents, false certificates of service), lack of jurisdiction (no standing, ultra vires acts), statutory violations (RESPA, TILA, FDCPA, FCRA, HUD/FHA rules), and constitutional violations (due process). These grounds independently warrant vacatur and injunctive relief.

237. 205. Irreparable Harm: The property is Defendant's homestead. Real property is unique, and a forced sale constitutes irreparable harm not compensable by money damages.

238. 206. Balance of Equities: A short stay imposes minimal burden on Plaintiff, which has already benefitted from insurance/securitization proceeds, whereas Defendant faces loss of a family home.

239. 207. Public Interest: Staying a sale procured through fraud and regulatory violations preserves confidence in the judiciary and enforces federal law and HUD/FHA regulations.

240. 208. Security: Defendant requests the Court waive or set nominal security given indigency and the strong showing on the merits (see Fed. R. Civ. P. 65©).

241. WHEREFORE, Defendant respectfully prays that this Court enter orders:

A. 242. Immediately issuing a Temporary Restraining Order and Preliminary Injunction staying/canceling the September 9, 2025 foreclosure sale and any subsequent sale pending final adjudication;

B. 243. Vacating the state court final judgment of foreclosure as void ab initio (Fed. R. Civ. P. 60(d)(3)–(4));

C. 244. Declaring that Plaintiff lacks standing; that the alleged note/mortgage are unenforceable and/or discharged; and that Plaintiff's assignment and related filings are void;

D. 245. Quieting title In Defendant's favor as to Plaintiff and anyone claiming through it;

E.

40

F. 246. Compelling a full forensic accounting (both sides of the ledger), including ledgers, escrow applications, all FHA/HUD insurance claims and proceeds, all securitization proceeds and CUSIP monetization, and identification of the true holder in due course, with production under oath;

G. 247. Ordering disgorgement and restitution of: (1) all payments collected from inception; (2) all FHA/HUD or other insurance proceeds; (3) all securitization and CUSIP-related gains; and (4) any other monetization tied to Defendant's account/signature;

H. 248. Imposing a constructive trust over all proceeds identified in (F) and directing deposit into the Registry of the Court (Fed. R. Civ. P. 67);

I. 249. Awarding damages under RESPA, TILA, FDCPA, FCRA, RICO (including treble damages), FDUTPA, civil theft (treble), and Florida common law, as proven at hearing or trial;

J. 250. Awarding sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, and referring attorney misconduct to appropriate disciplinary authorities;

K. 251. Awarding pre- and post-judgment interest as permitted by law and equity;

41

L. 252. Awarding costs and (in equity) reasonable fees;

M. 253. Granting such other and further relief in law and equity as is just and proper to restore Defendant's rights and protect the integrity of the justice system.

254. I, STACI-ANNETTE: VARNUM, declare under penalty of perjury that the facts stated in this Verified Emergency Motion are true and correct to the best of my knowledge, information, and belief.

255. Executed on September 9, 2025, in Wesley Chapel, Pasco County, Florida.

256. _____

257. STACI-ANNETTE: VARNUM, sui juris

258. By Special Appearance, In Persona, Purpura, Ceri Juris

259. SOUL BENEFICIARY & AUTHORIZED REPRESENTATIVE of

260. STACI ANNETTE VARNUM and THE ESTATE OF CURTIS NEIL VARNUM

261. 30148 Clearview Drive

262. Wesley Chapel, FL 33545

263. Phone: (813) 629-5411

264.

265. Staci-Annette: Varnum

266. UCC1-308 All rights reserved without prejudice.  Void where prohibited.

42